UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

EARL SIDNEY DAVIS,
    Plaintiff,

vs.      07-3227

EUGENE McADORY, TARRY WILLIAMS, and CYNTHIA DOUGHERTY,
    Defendants.

MEMORANDUM OPINION AND ORDER

    Before the court are the defendants' summary judgment motion [25], the plaintiff's response [32] and the defendants' reply [33].

INTRODUCTION

    The plaintiff, Earl Sidney Davis is civilly committed to the custody of the Illinois Department of Human Services ("Department") pursuant to the Sexually Violent Persons Commitment Act, 725 Ill. Comp. Stat. Ann. 207/1 et seq. (West 2008) ("SVP Act"). Davis brings this civil rights action against various security officials for constitutional violations alleged to have occurred at the Rushville Treatment & Detention Facility ("Rushville TDF") on September 26, 2006. *See* complaint [1]. On that date, Davis was restrained and taken to a segregated room after he failed to comply with a direct order during an emergency security situation. Davis claims that the defendants' actions were arbitrary or excessively punitive in the following ways: (1) by allowing him to be momentarily exposed naked to residents and staff; (2) by placing him in a segregated room for two days; (3) by placing him in handcuff restraints; and (4) by exposing him to inhumane conditions of confinement in secure management status. *Id.* Davis next alleges that the defendant, Dougherty applied force maliciously and sadistically for the purpose of causing him harm when she escorted him in handcuff restraints to a segregated room. *Id.* Finally, Davis alleges that the defendants denied him medical care after he was escorted to a segregated room. *Id.*

    The defendants move for summary judgment on the following grounds. First, Davis's conditions of confinement were reasonably related to institutional security. Second, the use of force complained of was the type authorized for security purposes in a good-faith effort to maintain discipline. Third, there is insufficient evidence for a rational jury to find that Davis suffered from a serious medical need and that Defendants were deliberately indifferent. Fourth, the defendants are entitled to qualified immunity.

UNDISPUTED MATERIAL FACTS[1]

1. Davis is civilly committed to the custody of the Department at the Rushville TDF pursuant to the SVP Act. (Def's. Ex. D; Davis Dep. Trans. dated Sept. 24, 2008, p. 6, line 17 - p. 6, line 22.)
2. As of September 26, 2006, Defendant Williams was employed as a Security Therapy Aid-IV at the Rushville TDF. (Defs.' Ex. C; Williams Aff., ¶ 1.)
3. As of September 26, 2006, Defendant Dougherty was employed as a Security Therapy Aid-II at the Rushville TDF. (Defs.' Ex. B; Dougherty Aff., ¶ 1.)
4. As of September 26, 2006, Defendant McAdory was employed as a Shift Commander at the Rushville TDF. (Defs.' Ex. A; McAdory Aff., ¶ 1.)
5. The Department provides by rule for the nature of the Rushville TDF, the level of care to be provided in the Rushville TDF, and the custody and discipline of persons placed in the Rushville TDF. (Defs.' Ex. A; McAdory Aff., ¶ 2.)
6. The large majority of residents in the Rushville TDF have repeatedly engaged in acts of sexual violence, some with adults. (Defs.' Ex. A; McAdory Aff., ¶ 3.)
7. There is an established history of residents acting in threatening and assaultive ways toward the staff and other residents. (Defs.' Ex. A; McAdory Aff., ¶ 3.)
8. There have been numerous assaults on staff and between residents, resulting in the implementation of a variety of measures, all of which are monitored and enforced by trained personnel, to maintain institutional security, internal order, and ensure the protection of residents and staff. (Defs.' Ex. A; McAdory Aff., ¶ 3.)
9. Handcuffs, security belts, and/or leg irons may be used to restrain any resident when the resident is confined in special or secure management status, or is confined pending investigation, and needs to be moved within the facility. (Defs.' Ex. A; McAdory Aff., ¶ 4.)
10. On September 26, 2006, a physical altercation broke out between two residents in Charlie Unit at the Rushville TDF. (Defs.' Ex. A; McAdory Aff., ¶ 5; Defs.' Ex. B; Dougherty Aff., ¶ 2.)
11. As the residents who were involved in the fight were physically restrained by security staff, all other residents who were present in Charlie Unit were ordered to return to their rooms for lock-up until the emergency security situation was resolved, pursuant to standard protocol. (Defs.' Ex. A; McAdory Aff., ¶ 5; Defs.' Ex. B; Dougherty Aff., ¶ 2.)
12. Residents then began yelling to distract staff. (Defs.' Ex. A; McAdory Aff., ¶ 5.)
13. Defendant McAdory approached the shower area because it sounded to him like the yelling came from that direction. (Defs.' Ex. A; McAdory Aff., ¶ 5.)
14. Defendant McAdory repeatedly asked the resident who was in the shower to identify himself, to which the resident (later identified as Davis) replied, "Why?" (Defs.' Ex. A; McAdory Aff., ¶ 5; Defs.' Ex. B; Dougherty Aff., ¶ 2.)
15. After repeated attempts to identify Davis during the emergency security situation, Defendant McAdory ordered Davis to turn off the water and to get dressed. (Defs.' Ex. A; McAdory Aff., ¶ 5; Defs.' Ex. B; Dougherty Aff., ¶ 2.)

---

[1]Exhibits are attached to the defendants' memorandum of law [25].

16. Defendant McAdory pulled the shower curtain back. (Defs.' Ex. D; Davis Dep. Trans. dated Sept. 24, 2008, p. 22, line 6 - p. 22, line 9.)
17. Davis refused Defendant McAdory's order and, instead, turned his back to Defendant McAdory. (Defs.' Ex. A; McAdory Aff., ¶ 5; Defs.' Ex. B; Dougherty Aff., ¶ 2.)
18. Residents are prohibited from willfully refusing to comply with orders. (Defs.' Ex. A; McAdory Aff., ¶ 5.)
19. Given Davis's refusal to comply with a direct order during an emergency security situation, Defendant McAdory ordered Defendants Dougherty and Williams to temporarily place Davis in secure management status because Davis's actions posed a threat to the safety and security of the facility. (Defs.' Ex. A; McAdory Aff., ¶ 5; Defs.' Ex. B; Dougherty Aff., ¶ 2; Defs.' Ex. C; Williams Aff., ¶ 2.)
20. After Davis put on his robe, he walked from the shower area to his room. (Defs.' Ex. B; Dougherty Aff., ¶ 3; Defs.' Ex. C; Williams Aff., ¶ 3.)
21. Defendant Williams stood outside Davis's doorway to ensure institutional security as Davis dressed. (Defs.' Ex. C; Williams Aff., ¶ 3.)
22. Davis became loud and argued with Defendant Williams to get out of Davis's doorway. (Defs.' Ex. B; Dougherty Aff., ¶ 3; Defs.' Ex. C; Williams Aff., ¶ 3.)
23. Defendant Williams instructed Davis to quiet down and to get dressed. (Defs.' Ex. B; Dougherty Aff., ¶ 3; Defs.' Ex. C; Williams Aff., ¶ 3.)
24. Davis continued to argue that Defendant Williams needed to get out of Davis's doorway. (Defs.' Ex. B; Dougherty Aff., ¶ 3; Defs.' Ex. C; Williams Aff., ¶ 3.)
25. The door to Davis's room remained open until he was fully dressed. (Defs.' Ex. B; Dougherty Aff., ¶ 3; Defs.' Ex. C; Williams Aff., ¶ 3.)
26. As of September 26, 2006, Defendants Dougherty and Williams were unaware of any medical or other reason for Davis to be restrained in any restraint other than standard handcuffs. (Defs.' Ex. B; Dougherty Aff., ¶ 3; Defs.' Ex. C; Williams Aff., ¶ 3.)
27. Defendant Dougherty applied handcuff restraints (in the only size known to be available) to Davis in a secure manner, but so as not to restrict circulation. (Defs.' Ex. B; Dougherty Aff., ¶ 3; Defs.' Ex. C; Williams Aff., ¶ 3.)
28. Defendant Dougherty applied handcuff restraints to Davis by linking two sets of cuffs together before they were applied because Davis had previously complained that the handcuffs hurt his arms. (Defs.' Ex. B; Dougherty Aff., ¶ 4; Defs.' Ex. C; Williams Aff., ¶ 4.)
29. In response to Defendant McAdory's order, Defendants Dougherty and Williams escorted Davis to a segregated room without further incident. (Defs.' Ex. B; Dougherty Aff., ¶ 4; Defs.' Ex. C; Williams Aff., ¶ 4.)
30. Defendant Dougherty did not use any force against Davis. (Defs.' Ex. B; Dougherty Aff., ¶ 5.)
31. Defendant Williams did not use any force against Davis. (Defs.' Ex. C; Williams Aff., ¶ 4; Defs.' Ex. D; Davis Dep. Trans. dated Sept. 24, 2008, p. 37, line 3 - p. 38, line 2.)
32. Defendant McAdory did not use any force against Davis. (Defs.' Ex. D; Davis Dep. Trans. dated Sept. 24, 2008, p. 38, line 3 - p. 38, line 7.)
33. Davis walked to the special management unit voluntarily. (Defs.' Ex. B; Dougherty Aff., ¶ 5; Defs.' Ex. C; Williams Aff., ¶ 5.)

34. It took approximately five minutes to escort Davis from Charlie Unit to the special management unit. (Defs.' Ex. B; Dougherty Aff., ¶ 4; Defs.' Ex. C; Williams Aff., ¶ 4; Defs.' Ex. D; Davis Dep. Trans. dated Sept. 24, 2008, p. 40, line 21 - p. 41, line 8.)
35. Defendant Dougherty did not yank Davis's handcuff restraints as she escorted him to the special management unit. (Defs.' Ex. D; Davis Dep. Trans. dated Sept. 24, 2008, p. 43, line 11 - p. 43, line 13.)
36. Davis did not advise Defendant Dougherty that he felt the handcuff restraints were applied too tightly, nor did he complain that she lifted the handcuff restraints too high as he was escorted to the special management unit. (Defs.' Ex. D; Davis Dep. Trans. dated Sept. 24, 2008, p. 45, line 7 - p. 45, line 24.)
37. Davis's wrists were not bleeding as a result of the application of handcuff restraints. (Defs.' Ex. D; Davis Dep. Trans. dated Sept. 24, 2008, p. 46, line 1 - p. 46, line 7.)
38. Defendant McAdory did not escort Davis to the special management unit. (Defs.' Ex. A; McAdory Aff., ¶ 6.)
39. Davis was seen by a nurse within an hour and a half after he arrived in the special management unit. (Defs.' Ex. D; Davis Dep. Trans. dated Sept. 24, 2008, p. 46, line 6 - p. 46, line 14.)
40. Defendants were not present when Davis was examined by the nurse. (Defs.' Ex. D; Davis Dep. Trans. dated Sept. 24, 2008, p. 46, line 15 - p. 47, line 12.)
41. Defendants were not present when Davis requested his inhaler from the nurse. (Defs.' Ex. D; Davis Dep. Trans. dated Sept. 24, 2008, p. 57, line 21 - p. 58, line 16.)
42. Defendants did not observe Davis during his temporary placement in secure management status. (Defs.' Ex. A; McAdory Aff., ¶ Six; Debs.' Ex. B; Dougherty Off., ¶ five; Debs.' Ex. C; Williams Off., ¶ 5; Defs.' Ex. D; Davis Dep. Trans. dated Sept. 24, 2008, p. 47, line 22 - p. 48, line 9; p. 51, line 17 - p. 53, line 4.)
43. Defendants have never observed the housing conditions in the special management unit to be less than well maintained, sanitary, and otherwise hospitable. (Defs.' Ex. A; McAdory Aff., ¶ 6; Defs.' Ex. B; Dougherty Aff., ¶ 5; Defs.' Ex. C; Williams Aff., ¶ 5.)
44. Defendants did not observe Davis to be in need of medical treatment, nor did he request medical attention in their presence. (Defs.' Ex. A; McAdory Aff., ¶ 6; Defs.' Ex. B; Dougherty Aff., ¶ 6; Defs.' Ex. C; Williams Aff., ¶ 6.)
45. On September 28, 2006, Davis appeared before the Behavior Committee and was found guilty of a minor rule violation for disobeying a direct order. (Defs.' Ex. A; McAdory Aff., ¶ 8.)
46. Davis was removed from secure management status on September 28, 2006. (Defs.' Ex. A; McAdory Aff., ¶ 8.)
47. Davis was confined in a segregated room for just over 48 hours. (Defs.' Ex. D; Davis Dep. Trans. dated Sept. 24, 2008, p. 56, line 5 - p. 56, line 18.)

Standard

Summary judgment is warranted only if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may discharge this burden by "showing . . . an absence of evidence to support the nonmoving party's case." Id., 477 U.S. at 325.  When the moving party has met the burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250. In determining whether the nonmovant has identified a "material" issue of fact for trial, "[o]nly dispute[s] that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996).  A court must enter summary judgment against the plaintiff when the plaintiff fails to come forward with evidence that would reasonably permit a finder of fact to find in plaintiff's favor on a material question. *Waldridge v. Am. Hoechst Corp*., 24 F.3d 918, 920 (7th Cir. 1994).

Discussion and Conclusion of Law

Davis's conditions of confinement were reasonably related to institutional security.  Like a pretrial detainee, a civilly committed sexually violent person may not be subjected to conditions that amount to "punishment" without due process.  *Sain v. Wood*, 512 F.3d 886, 893 (7th Cir. 2008). Sexually violent persons may nevertheless be subjected to conditions that advance goals such as preventing escape and assuring the safety of others, even though they may not technically be "punished." *Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir. 2003).  Facilities dealing with those who have been involuntarily th committed for sexual disorders are "volatile" environments whose day-to-day operations cannot be managed from on high. *Youngberg v. Romeo*, 457 U.S. 307, 321-24 (1982) (extending "professional judgment standard to substantive due process claim brought by involuntarily committed mental patient and noting that such a presumption was "necessary to enable institutions of this type–often, unfortunately, overcrowded and understaffed–to continue to function").  Therefore, if professional judgment leads to the conclusion that certain prohibitions are necessary for the well-being of the committed person, then the Constitution permits such prohibitions. *Bell v. Wolfish*, 441 U.S. 520, 539-40 (1979). The U.S. Supreme Court generalizes the proposition this way: "due process requires that the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed." *Seling v. Young*, 531 U.S. 250, 265 (2001).

The Rushville TDF is not a prison or jail, but neither is it simply a mental hospital.  The SVP Act effectuates the civil commitment of those who have been convicted of a sexually violent offense and who have been found to be "dangerous because [the person] suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence" again.  725 ILCS 207/5(f).  Indeed, the large majority of residents at the Rushville TDF have repeatedly engaged in acts of sexual violence, some with adults. (Undisputed Material Fact No. 6.)  There is an established history of residents acting in threatening and assaultive ways toward the staff and other residents. (Undisputed Material

Fact No. 7.) Given the make-up of the resident population at the Rushville TDF, measures employed by facility administrators to maintain institutional security, internal order, and ensure the protection of residents and staff are recognized as permissible non-punitive interventions. *Youngberg*, 457 U.S. at 322-24. As such, in considering whether state actions are rationally related to institutional security, a court must give considerable weight to the security concerns of the facility's staff and should only disturb those efforts when there is evidence of arbitrariness or excessive punitive force. *See Id.* at 324 (decisions regarding the conditions of civil confinement are entitled to a presumption of correctness).

Davis's constitutional rights were not violated when residents and staff were allowed to see him naked for a brief period of time. On September 26, 2006, a physical altercation broke out between two residents in Davis's housing unit at the Rushville TDF. (Undisputed Material Fact No. 10.) As the residents who were involved in the fight were physically restrained by security staff, all other residents were ordered to return to their rooms until the emergency security situation was resolved. (Undisputed Material Fact No. 11.) Defendant McAdory approached the shower area and repeatedly asked the person in the shower (later identified as Davis) to identify himself because it sounded to Defendant McAdory as if there was shouting coming from that area. (Undisputed Material Facts No. 12-14.) After Davis failed to identify himself, Defendant McAdory pulled the shower curtain back. (Undisputed Material Facts No. 15-16.) According to Davis, he was momentarily exposed without clothing to residents and staff until he put on his robe, which was next to the shower. (Defs.' Ex. D; Davis Dep. Trans. dated Sept. 24, 2008, p. 23, line 18 - p. 25, line 3.) Davis's complaint that other residents and staff were momentarily allowed to see him naked cannot form the basis of any liability against Defendant McAdory. First, a § 1983 claim requires the defendant to act purposely, not merely negligently, and that is the worst that Davis alleges. There is no evidence to suggest that Defendant McAdory intentionally exposed Davis to residents and staff. More important, given Davis's failure to identify himself while behind the shower curtain, it was reasonable for Defendant McAdory to pull the shower curtain back to determine whether Davis posed an additional threat to institutional security in the midst of the emergency security situation. The Seventh Circuit has determined that " . . . not every psychological discomfort a prisoner endures amounts to a constitutional violation.' Being made to stand naked twenty minutes as part of a random drug-testing policy is not a 'sufficiently serious' condition of confinement to rise to the level of a constitutional violation." *Whitman v. Nesic*, 368 F.3d 931, 935 (7th Cir. 2004), quoting *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). It therefore follows that being exposed without clothing for mere moments is not a sufficiently serious condition of confinement to give rise to the level of a constitutional violation.

Temporary placement of Davis in segregated room was rationally related to institutional security. Davis was noncompliant with reasonable staff requests during an emergency security situation, and staff responded by restraining him and taking him to a segregated room. Defendant McAdory ordered Davis to turn off the water and to get dressed. (Undisputed Material Fact No. 15.) Davis refused Defendant McAdory's order, and, instead, turned his back to Defendant McAdory, in an apparent act of defiance. (Undisputed Material Fact No. 17.) Residents are prohibited from willfully refusing to comply with orders. (Undisputed Material Fact No. 18.) Given Davis's refusal to comply with a direct order during an emergency security situation, Defendant McAdory ordered

6

Davis's temporary placement in a segregated room because Davis's actions posed a threat to the safety and security of the institution. (Undisputed Material Fact No. 19.)

The determination of whether an official's act is "excessive" must account for the context and setting in which the action occurred; put another way, what might seem excessive or arbitrary in a state mental hospital is not necessarily excessive in a facility dealing with those who have been convicted of a sexual crime and who have been deemed to constitute a danger in the future. It is also important to note that Davis's noncompliance occurred in the midst of an emergency security situation. In light of the above, there is insufficient evidence for a rational jury to find that Davis was subjected to an arbitrary exercise of authority. To the contrary, Defendant McAdory's decision to order the temporary placement of Davis in secure management status was reasonably related to the maintenance of security within the Rushville TDF.

Handcuff restraints were applied to Davis to protect residents and staff. Likewise, Davis's contention that his placement in handcuff restraints constituted an arbitrary exercise of authority fails to account for the context and setting in which the action was taken. As he dressed, Davis became loud and argumentative with staff. (Undisputed Material Facts No. 22-24.) That, combined with Davis's noncompliance with reasonable staff requests, necessitated the application of handcuff restraints to ensure the safety and security of residents and staff as Davis was escorted to a segregated room. Handcuffs, security belts, and/or leg irons may be used to restrain any resident when the resident is confined in special management status, or is confined pending investigation, and needs to be moved within the facility. (Undisputed Material Fact No. 9.) The application of handcuff restraints to Davis as he was escorted to a segregated room was a permissible non-punitive intervention designed to protect residents and staff.

The conditions in Davis's segregated room were not serious enough to establish a constitutional violation. The Eighth (and Fourteenth) Amendment requires that residents be housed under "humane conditions" and provided with "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). Here, Davis alleges that Defendants Dougherty and Williams escorted him to a segregated room, and that, later, he was escorted by other staff to a different room. (Defs.' Ex. D; Davis Dep. Trans. dated Sept. 24, 2008, p. 48, line 4 - p. 48, line 14; p. 51, line 9 - p. 53, line 24.) Davis contends that the second room was infested with spiders and that the room was full of garbage. (Defs.' Ex. D; Davis Dep. Trans. dated Sept. 24, 2008, p. 51, line 9 - p. 53, line 24.) Davis acknowledges, however, that the Defendants were not present during the time he was confined in the dirty room. (Defs.' Ex. D; Davis Dep. Trans. dated Sept. 24, 2008, p. 51, line 9 - p. 53, line 24.) Indeed, Defendants did not observe Davis during his temporary placement in secure management status. (Undisputed Material Fact No. 42.) Significantly, Defendants have never observed the housing conditions in the special management unit to be less than well maintained, sanitary, and otherwise hospitable. (Undisputed Material Fact No. 43.) To be liable for the conduct of others, an individual must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988). There is insufficient evidence for a rational jury to find that Defendants were aware that Davis was subjected to inhumane conditions in the special management unit. Even if Defendants were aware of the conditions that Davis endured, the

conditions of confinement as alleged by Davis were not objectively serious enough to establish a constitutional violation. Prolonged pest infestation may be considered a deprivation sufficient to constitute a due process violation. *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996). In *Antonelli*, however, the Seventh Circuit emphasized that "the allegation of sixteen months of infestation and significant physical harm" distinguished his case from the typical pest-infestation complaint. 81 F.3d at 1431 (emphasis added). In *Sain*, a civilly committed detainee alleged that he resided for six years in a cell that was infested with bugs and that had poor circulation and temperature control. The Seventh Circuit concluded:

> "[t]he conditions of Mr. Sain's detention were certainly unpleasant. The state deserves no praise for permitting them to persist. However, we cannot say that, whether considered individually or collectively, they constitute a constitutional violation. To be considered a constitutional violation, Mr. Sain's deprivations must be 'objectively serious.' We conclude that a reasonable jury could not conclude that Mr. Sain's conditions of confinement were objectively serious enough to establish a constitutional violation."

512 F.3d at 894. Here, Davis alleges that he was confined to the dirty and spider-infested room for just over 48 hours. (Undisputed Material Fact No. 47.) He does not allege that he was bitten. While the conditions described by Davis were certainly unpleasant, a reasonable jury could not conclude that Davis's conditions of confinement were objectively serious enough to establish a constitutional violation.

The use of force complained of was the type authorized for security purposes in a good faith effort to maintain discipline. The Supreme Court notes that there is no reason to distinguish between convicted inmates and pretrial detainees in the context of excessive force allegations. *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). As a result, the Seventh Circuit has "found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) without differentiation." *Board v. Farnham,* 394 F.3d 469, 478 (7th Cir. 2005); *see also Brown v. Budz*, 398 F.3d 904, 910 (there is little practical difference between Eighth Amendment and Fourteenth Amendment standards). The core judicial inquiry in determining whether an official used excessive force in violation of the Eighth Amendment is whether the force was applied in a good-faith effort to maintain or restore discipline rather than to maliciously and sadistically cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6-9 (1992). There are several factors used to determine if excessive force was used, including "the need for the application of the force, the amount of force applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that force caused to an inmate." *Filmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004) (*citing DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 1999)). With regard to the extent of injury inflicted, a plaintiff cannot state a claim for excessive force under the Eighth Amendment on a de minimis use of physical force. *Outlaw v. Newkirk,* 259 F.3d 833, 838 (7th Cir. 2001). De minimis uses of physical force are excluded from constitutional recognition if the use of force ". . . is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10.

Here, Davis acknowledges that Defendants McAdory and Williams did not use any force against him. (Undisputed Material Facts No. 31-32.) Consequently, the only remaining issue is whether the manner in which Defendant Dougherty applied the handcuff restraints to Davis was designed to cause him harm. Defendant Dougherty applied handcuff restraints (in the only size known to be available) to Davis in a secure manner, but so as not to restrict circulation. (Undisputed Material Fact No. 27.) Defendant Dougherty applied the restraints by linking two sets of handcuffs together before they were applied because Davis has previously complained that the handcuffs hurt his arms. (Undisputed Material Fact No. 28.) Davis then walked to the special management unit voluntarily. (Undisputed Material Fact No. 33.) In *Outlaw*, the Seventh Circuit held that summary judgment was properly granted on a prisoner's claim arising from a hand injury that occurred when a guard allegedly slammed it in a cuff-port hatch (a small hatch within the cell door). 259 F.3d at 841. There, because the evidence revealed only a minor injury, the Seventh Circuit held that a jury could conclude only one of two things: either the incident was an accident, or that the guard used a minor amount of force to achieve a legitimate security objective. In this case, it is most telling that Davis's wrists were not bleeding as a result of the application of handcuff restraints. (Undisputed Material Fact No. 37.) Moreover, Davis himself acknowledges that Defendant Dougherty did not yank Davis's handcuff restraints. (Undisputed Material Fact No. 35.) Davis also admits that he did not advise Defendant Dougherty that he felt the handcuff restraints were applied too tightly, nor did he complain about the manner in which she escorted him to the special management unit. (Undisputed Material Fact No. 36.) A jury could conclude only that Defendant Dougherty used a minor amount of force to achieve a legitimate security objective by applying handcuff restraints to Davis. The incident described by Davis is just the type of a de minimis use of force that does not implicate the Eighth Amendment. Accordingly, Defendants are entitled to summary judgment as to Davis's claim that they used force maliciously and sadistically to cause him harm.

There is insufficient evidence for a rational jury to find that Davis suffered from a serious medical need and that defendants were deliberately indifferent. Deliberate indifference is a separate issue implicating the adequacy of medical care rather than the constitutional implications of using physical restraints or placement in a segregated room. Claims for deliberate indifference to a serious medical need contain both an objective and a subjective component. Under the objective component, plaintiffs must demonstrate that their medical need is "objectively, sufficiently serious." *Farmer*, 511 U.S. at 834. A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the need for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7 Cir. th 2005). Under the subjective component, plaintiffs must demonstrate that officials acted with a "'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In

other words, officials must act or fail to act despite their knowledge of a substantial risk of serious harm. *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999).

In this case, Davis's claim for deliberate indifference fails on both the objective and subjective components. Davis cannot demonstrate that his medical need was objectively, sufficiently serious. Davis does not allege that he suffered any major medical emergency that required immediate attention. Indeed, Davis acknowledges that the application of handcuff

9

restraints caused no bleeding. (Undisputed material Fact No. 37.) Even if Davis were able to prove that he suffered a sufficiently serious medical need, he still must prove that Defendants knew of a substantial risk of serious injury and failed to take measures to prevent that harm from occurring. Davis was examined by a nurse within an hour and a half after he arrived in his segregated room. (Undisputed Material Fact No. 39.) Defendants were not present when Davis was examined by the nurse. (Undisputed Material Fact No. 40.) Davis also acknowledges that the Defendants were not present when he requested his inhaler from the nurse. (Undisputed Material Fact No. 41.) Defendants did not observe Davis to be in need of medical treatment, nor did he request medical attention in their presence. (Undisputed Material Fact No. 44.) There is insufficient evidence for a reasonable jury to find that Defendants knew of a substantial risk of serious injury and failed to take measures to prevent that harm from occurring, because Davis was examined by a nurse shortly after his arrival in special management and he failed to alert Defendants that he needed his inhaler. Accordingly, Defendants are entitled to summary judgment.

**It is therefore ordered:**

1. **The defendants' motion for summary judgment[25] is granted pursuant to Fed. R. Civ. P. Rule 56(c). The clerk of the court is directed to enter judgment in this case in favor of the defendants and against the plaintiff pursuant to Fed. R. Civ. P. Rule 56(c). This lawsuit is terminated in its entirety. The parties are to bear their own costs.**
2. **If the plaintiff wishes to appeal this decision, he must file a notice of appeal with this court within 30 days of entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(c). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. § 1915(g).**

**Entered this 29th day of September 2009.**

s\Harold A. Baker
_____
**Harold A. Baker
United States District Judge**